LA ASOCIACIÓN DE EMBOTELLADORES DE PUERTO RICO, ETC., recurrentes, *v.* JUNTA DE SALARIO MÍNIMO DE PUERTO RICO, recurrida.

*Número:* O-67-113          *Resuelto:* 19 de junio de 1968

*Pieras & Martín,* abogados de las recurrentes; *Ismael Soldevila y Rafael Cabello Ortiz,* abogados de la recurrida.

---

Sala Segunda integrada por el Juez Asociado Señor Hernández Matos como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Dávila y Torres Rigual.

PER CURIAM: La Asociación de Embotelladores de Puerto Rico y sus compañías afiliadas impugnan el Decreto Mandatorio Núm. 33 (Cuarta Revisión 1966) aplicable a la Industria de Alimentos y Productos Relacionados. Sostienen que en lo que a las determinaciones de Salarios aplicables a la División de Gaseosas y Bebidas Refrescantes se refiere:

"A.—El Comité de Salario Mínimo y la Junta de Salario Mínimo de Puerto Rico actuaron sin facultad y en exceso de sus poderes y el decreto se obtuvo mediante fraude al variarse el acuerdo tomado en la penúltima sesión del Comité de Salario Mínimo referente al salario mínimo bajo el Artículo II, Sección 11 del mismo referente a la Industria de Gaseosas y Bebidas Refrescantes y añadirse la clasificación I bajo la Sección 11 y que imponía un salario mayor de aquel acordado para empresas con un volumen de ingreso bruto anual de $1,000,000.00 ó más sin que se citara dicha última reunión del Comité para tal propósito y sin que se diera oportunidad debida para prepararse a los miembros del Comité con el fin de rebatir tal aumento en los salarios que se hicieron sorpresivamente. Que mediante tal conducta los recurrentes han sido privados de la completa y justa operación del proceso tripartita (Trabajo-Patrono-Público) provisto por la ley para determinar salarios mínimos.

B y C.—B. El Comité de Salario Mínimo y la Junta de Salario Mínimo de Puerto Rico actuaron sin facultad y en exceso de sus poderes al clasificar salarios de acuerdo con el volumen de ingreso bruto de la industria referente al Artículo II, Sección 11—Gaseosas y Bebidas Refrescantes—del Decreto Mandatorio #33, Cuarta Revisión, en tanto y cuanto que tal diferencial en salario dentro de la misma industria y sin referencia a regiones concede ventaja de competencia a aquellas industrias con un ingreso bruto menor de $1,000,000.00 anual en violación a la letra escrita de la ley y al espíritu de la misma."

La mera exposición de lo ocurrido en el Comité de Salario Mínimo definitivamente desvirtúa la imputación de fraude.

No hay la más leve justificación para tal imputación. Solo la explica la disposición de la Sec. 29 de la Ley de Salario Mínimo que limita la facultad de este Tribunal para anular o devolver una orden de salarios al que la Junta actuara sin facultad o en exceso de sus poderes o porque la orden se hubiere obtenido mediante fraude. A continuación lo ocurrido en el Comité.

En la sesión correspondiente al 27 de septiembre de 1966 (Acta Núm. 8) la representación obrera propuso que la clasificación "Torrefacción de Café" se dividiera en dos subclasificaciones entre aquellas empresas con ingresos brutos anuales de $500,000 ó más y aquellas empresas con ingresos brutos anuales menores de $500,000. La representación patronal sometió una enmienda a esa proposición a los efectos de hacer la división por volumen de ingresos brutos anuales aplicables a todas las empresas, esto es incluyendo la División de Gaseosas y Bebidas Refrescantes. Ambas proposiciones fueron derrotadas. Acordaron unánimemente mantener la misma división que existía en el Decreto entonces vigente.

En la sesión correspondiente al 4 de octubre de 1966 (Acta Núm. 10) al considerar la clasificación "Gaseosas y Bebidas Refrescantes", la parte patronal propone que se creen dos subclasificaciones, una para empresas con ingresos brutos anuales de $1,000,000.00 ó más y otra para empresas con ingresos menores de $1,000,000.00. Es derrotada. La representación obrera propone entonces que la clasificación sea a base de ingresos brutos anuales de más de $500,000 y menos de $500,000. También es derrotada. Luego de considerar distintas proposiciones de salarios el Comité aprueba los siguientes a propuesta de la representación del interés patronal: Choferes $1.15, Empleados de Oficina $1.25, Otros $0.90. Votaron a favor de estos salarios la representación patronal, dos del interés público, absteniéndose el tercero y en contra la representación obrera.

En la sesión del 6 de octubre (Acta Núm. 11) se ratifica el anterior acuerdo.

En la sesión correspondiente al 24 de octubre de 1966 (Acta Núm. 12) estando todos los miembros del Comité presentes la representación obrera propone que se reconsidere la clasificación correspondiente a Gaseosas y Bebidas Refrescantes. Aprobada, la representación obrera propone que se divida esta clasificación entre empresas con ingresos brutos anuales de más de $750,000 y menos de $750,000. La representación del interés público enmienda la proposición para que la clasificación sea a base de un ingreso bruto anual de $1,000,000.00. No prosperó la enmienda.

Los miembros del interés patronal pidieron un receso para reunirse en caucus. Al reunirse el Comité de nuevo, la representación obrera propone entonces que la clasificación sea a base de un ingreso mayor o menor de $1,000,000.00. Es aprobada con los votos de la representación del interés público y dos de la representación obrera. Votaron en contra dos de la representación patronal y se abstuvieron uno de la representación obrera y otro de la patronal.

La representación obrera propone los siguientes salarios:
Ingresos brutos anuales de más de $1,000,000 $1.25
     "        "     mínimos:

| | |
|---|---|
| Choferes | $1.15 |
| Empleados Oficina | 1.25 |
| Otros | .90 |

Surge del Acta que el Comité acordó levantar la sesión hasta el 26 de octubre "en que se analizará el impacto que estas recomendaciones tendrían en las empresas de la clasificación."

En el Acta Núm. 13 de la sesión correspondiente al 26 de octubre de 1966, todos los miembros presentes, se hizo constar que el Comité discutió las reglas que regirían el cómputo del ingreso bruto anual en la clasificación Gaseosas y Bebidas Refrescantes y definiciones de conceptos. Luego el reglamento

y las definiciones son aprobadas por unanimidad y se acuerda pasen a formar parte del proyecto de decreto mandatorio que el Comité someterá a la Junta de Salario Mínimo.

El Comité considera entonces la proposición de salarios que hizo la representación obrera en la sesión correspondiente al 24 de octubre y es aprobada con los votos en contra de la representación patronal.

De lo anterior surge que fue la representación patronal la que en primera instancia hizo la proposición para clasificar la industria a base de ingreso bruto anual, que luego de adoptar las clasificaciones en la sesión del 24 de octubre se suspendió la sesión para considerar en la próxima reunión el impacto que los salarios propuestos por la representación obrera tendrían en la industria y que en la próxima reunión se aprobó por unanimidad las reglas para determinar el cómputo bruto anual y las definiciones de concepto en cuanto a la clasificación. En todas estas reuniones estuvo presente la representación patronal. Como antes expresamos la narración de los hechos establece la falta absoluta de base para la imputación de fraude. Además es una clara demostración del proceso tripartita en operación.

Sostienen los recurrentes que no hay autoridad en ley para establecer la clasificación a base del ingreso bruto anual "en tanto en cuanto que tal diferencial en salario dentro de la misma industria y sin referencia a regiones concede ventaja de competencia a aquellas industrias con un ingreso bruto menor de $1,000,000 anual en violación de la letra escrita de la ley y al espíritu de la misma."

Dispone la Sec. 16(1) de la Ley de Salario Mínimo que "[l]os comités pueden también recomendar salarios mínimos diferentes para varias zonas o regiones o para varias categorías o clase de la misma industria cuando, a su juicio, tal diferenciación pueda ser aconsejable debido a las condiciones

---

(1) 29 L.P.R.A. sec. 245o.

existentes entre las zonas o regiones o categorías de la misma industria, siempre que tal acción no conceda ventajas de competencia a otras zonas, regiones o categorías de la misma industria."

Así vemos que la ley autoriza la clasificación hecha por el Comité, si la misma no concede ventajas de competencia. Veamos cuál es la situación en cuanto a esto. El informe del Comité justifica la clasificación y al efecto expresó:

"I. *Empresas con un Volumen de Ingreso Bruto Anual de $1,000,000 ó más*

En esta subclasificación de la industria operan cinco empresas con un total de 912 trabajadores. Éstas tuvieron ingresos en el año 1965 por valor de $19,834,616. La nómina de los empleados cubiertos por legislación de salario mínimo ascendió a $3,564,288 y el beneficio neto fue de $1,531,182 que representó el 7.7 por ciento de los ingresos.

El salario mínimo por hora vigente para la clasificación es de $1.00 para los chóferes, $1.15 para los empleados de oficina y 80 centavos para los otros empleados.

La mediana (en centavos) fue de 159.0 para chóferes, 149.8 para los empleados de oficina y de 124.0 para los otros empleados.

El Comité recomienda para la subclasificación los siguientes salarios mínimos por hora

| Ocupación | Salario Mínimo Recomendado |
|---|---|
| Chóferes | $1.25 |
| Empleados de Oficina | 1.25 |
| Otros Empleados | 1.25 |

El salario mínimo recomendado aumentaría la nómina de la subclasificación en 6.2 por ciento. Este aumento en términos absolutos es de $220,968. El beneficio neto se reduciría de $1,531,182 a $1,310,214 ó sea, a 6.6 por ciento. El 42.5 por ciento de los 912 empleados recibiría aumento en sus salarios.

II. *Empresas con Volumen de Ingresos Bruto Anual Menos de $1,000,000*

En esta subclasificación operan 13 empresas que emplearon 369 trabajadores. Éstas tuvieron ingresos en el año 1965 por valor de $5,033,655. La nómina de los empleados cubiertos por

legislación de salario mínimo ascendió a $1,164,651 y el beneficio neto fue de $137,856 y representó el 2.7 por ciento de los ingresos.

La mediana (en centavos) fue de 112.0 para chóferes, 136.4 para los empleados de oficina y de 92.0 para los otros empleados.

El Comité recomienda el siguiente salario mínimo para los trabajadores de la subclasificación:

| Ocupación | Salario Mínimos Recomendado |
|---|---|
| Chóferes | $1.15 |
| Empleados de Oficina | 1.25 |
| Otros Empleados | 0.90 |

De aprobarse este salario mínimo causaría un aumento de 5.1 por ciento en la nómina de la subclasificación. Este aumento en términos absolutos sería de $59,364. El beneficio neto se reduciría de $137,856 a $78,492, o sea, de 2.7 a 1.6 por ciento de los ingresos.

Al recomendar salarios de las dos subclasificaciones anteriores el Comité consideró que se justifica dicha separación ya que las cinco empresas con un volumen de ingreso bruto anual de $1,000,000 ó más están pagando mejores salarios a sus empleados, tienen mejor sistema de distribución del producto y están en mejor condición financiera y por consecuencia tienen mayor capacidad de pago que las empresas con un volumen de ingreso bruto anual menor de $1,000,000."

Vemos pues, que el beneficio de las firmas con ingresos de más de $1,000,000 fue de 7.7 por ciento de los ingresos y de las firmas con menos de $1,000,000 de ingreso bruto anual fue de 2.7 por ciento. En estas últimas, los salarios aprobados reducirían los beneficios a 1.6 por ciento de los ingresos.

Es interesante apuntar que la posición de la representación patronal en el Comité no fue que la clasificación aprobada le daba una ventaja competitiva a las empresas con ingresos brutos anuales menores de $1,000,000. Por el contrario la contención fue que los salarios aprobados para esa

categoría causarían la ruina de siete empresas. Veamos lo que ante el Comité expusieron:

"De aprobarse este salario mínimo, afirma el Comité, causaría un aumento de 5.1 por ciento en la nómina de la subclasificación. Este aumento, continúa diciendo el Comité, en términos absolutos sería de $59,364.00, lo cual reduciría el beneficio neto de las 13 empresas que operan en la subclasificación de $137,-856.00 a $78,496.00, o sea, que reduciría el beneficio de estas empresas de 2.7 a 1.6 por ciento de los ingresos.

Las cifras expuestas en la Tabla I, permiten apreciar fácilmente lo diferente que resulta en la realidad el efecto que produciría el aumento recomendado por el Comité sobre la situación financiera de las empresas. Dichas cifras revelan que el aumento recomendado, además de agravar considerablemente la situación de las 3 empresas que están sufriendo pérdidas, haría incurrir en pérdidas a las empresas marcadas con los números 8 y 13, las cuales verían convertidas sus exiguas ganancias de 0.3 por ciento sobre los ingresos, en pérdidas de 0.9 y 0.4 por ciento, respectivamente.

En adición a esto, la información contenida en la Tabla I permite apreciar que las empresas marcadas con los números 7 y 9 estarán por debajo del reducidísimo beneficio de 1.6 por ciento sobre los ingresos supuesto por el Comité.

Por tanto, el aumento recomendado para el presente caso llevaría prácticamente a la ruina a 7 de las 13 empresas que operan en esta subclasificación; todo lo cual, además de ser contrario a la política de promoción industrial del gobierno y de ser completamente injusto y arbitrario, precipitaría el cierre de las empresas afectadas y haría perder sus empleos a numerosos trabajadores."

Pero hay algo más. En la categoría de las empresas con más de $1,000,000 de ingreso bruto anual hay cinco empresas. Dos de éstas pagan por convenio un salario superior al fijado en el Decreto. La posición de la representación patronal ante el Comité fue en el sentido de que para las otras tres empresas "el aumento recomendado, por tanto, lesionaría considerablemente la situación financiera de las empresas afectadas y las colocaría además en posición de desventaja

competitiva frente a las otras empresas con un volumen de ingreso bruto anual mayor."

De lo expuesto es inevitable concluir que estuvo correcto el Comité en establecer las clasificaciones que estableció para la Industria de Gaseosas y Bebidas Refrescantes y que la clasificación aprobada no concede ventaja competitiva de clase alguna a las empresas con un ingreso menor de $1,000,000.

*No se cometieron ninguno de los errores apuntados.*